which is Weingarten v. United States. My plan is to start off with the ineffective assistance claim related to the statute of limitations and then hopefully reserve some time to talk about the lack of preparation of counsel. Counsel conceded that the five-year statute of limitations in 3282 did not bar Mr. Weingarten's prosecutions based on the exception in the 2003 amendment to 3283. That concession was doubly erroneous and therefore amounted to ineffective assistance of counsel. What about the succeeding lawyers who never raised it, too? There were at least two other lawyers before you got involved that never raised this either. I think the only other lawyer that could potentially have raised it would have been appellate counsel in the first appeal. And number one, presumably a lawyer looking through this record will say, well, this is invited error. I mean, as a matter of fact, defense counsel put this out there before. So was that ineffective assistance, too, for appellate counsel not to raise this? I believe it is. And I think we've raised that as well. But it could well be that appellate counsel just thought, well, it can't be raised at this point. It's going to have to be raised at 2250. Did Ms. Newman raise an ineffective assistance of counsel claim when she did the appeal? No, I believe Ms. Newman was involved just in the resentencing proceeding. Okay. But wasn't there an ineffective assistance claim raised in one of the appeals? No, there was not. The new counsel that came in after the trial result attempted to raise an ineffective assistance claim effectively. And Judge Gleeson said, no, I'm not going to decide that. That will have to wait until 2255. Okay. I don't understand why it's invited error. No one asked the judge to make a ruling on or accept a procedure that was wrong. It was a waiver, if it was anything. It wasn't really an invited error, was it? Because the judge wasn't operating under an error. The judge didn't make a ruling on the statute of limitations. Well. Invited error is where you say to the judge, do this, and that then turns out to be an incredibly substantive, an error that is so plain and so substantive that it goes to the very fairness of the trial. Well, it could be. I understand Your Honor's point. I mean, I think when you tell the judge, look, 3283 applies, so you instead should look at whether or not there's pre-indictment delay that violates due process, you pretty much invited the judge to. Well, but statute of limitations are waivable. And even criminal statute of limitations are waivable. And so the failure to bring it up may be an effective assent to the counsel, but I don't see how it's invited error. Otherwise, every time you have a situation where a lawyer makes a choice between constitutional due process type claim of speedy trial and or an actual speedy trial claim, you're going to have an invited error as opposed to. And these things are law issues. There's no real hard and fast requirement that you have a hearing on this. There's no hearing to be held. There's no issues of fact here. I mean, you've had this affidavit from the attorney that said you wanted to focus on the due process claim with one whole paragraph. I mean, it's just kind of weak and lame if you ask me. So I don't understand. You're the one who tossed out invited error, and I think you're in the wrong park. I think it's irrelevant anyway because we did raise the ineffective assistance of appellate to counsel claim. So whether or not it's waiver or invited error I don't think is relevant to the outcome. I will note that as far as the retroactivity issue, you know, there's a longstanding presumption against retroactivity. There has to be a clear statement. In 1975, the Third Circuit decided the Richardson case, applying that principle in statute of limitations context. Subsequent to that, Congress three different times, when it's wanted the statute of limitations to apply retroactively, 1989, 1990, and 2001, has explicitly stated that. There's no such statement with respect to 1983. Now, government counsel's only argument that really comes close to a statement, although not a clear statement argument, is to refer to the beginning language of 3283, which says, no statute of limitations that would otherwise preclude prosecution for an offense involving sexual abuse of a minor shall preclude. Now — What about Schneider? What about the Third Circuit? Schneider, actually, as far as retroactivity, basically accepts this same position because Richardson is a Third Circuit case. So Schneider says in footnote 1 of that opinion, with respect to 3299, not 3283, this is not — it's not retroactively applicable and cites Richardson. So Schneider is in the same ballpark as we are, is the Richardson ballpark. At the time this issue came up in your client's proceedings in the trial, had any circuit court bought your argument about 3283? Richardson had, yes. I mean, not 3283 explicitly, but it applied this. And then Congress, again, had explicitly said when it wanted statute of limitations to apply retroactively. Coming back to the language that the government relied on, that language is not like what Congress has done in other cases. And it existed in the first version of this statute in 1990, so obviously it didn't speak to a predecessor version of 3283. What it spoke to is 3282. And that's what it speaks to in 2003 as well, because what it talks about is a statute that would otherwise preclude. Well, 3282 is such a statute. It says, except as otherwise expressly provided by the law. It's the default rule. It's the default rule, and this is an exception to the default rule. Exactly. It imposes a longer period of time, and so your argument is that it's all written in the present tense, and so therefore you're stuck with that. And you also make the argument that the 2001 terrorism amendment, Congress knows how to write it. Sure, exactly. Because they made it crystal clear with regard to retroactivity there. Exactly. So let's presume then that it's ambiguous, and then we would go to the second step of landscape, right? We'd look to whether there's unfair retroactive effect, right? Yes, and I don't think there's been any dispute as to that. You know, pretty much all the cases that deal with the statute of limitation context assume, well, the person is now within the realm of statute of limitations that they wouldn't otherwise be. We have Enterprise, which talks about what those are, and Enterprise seems to be at odds with some of the other cases, and it cabins some of our characterization of a difference between procedural and substantive claims matters. But what are the unfair retroactive effects? Your client was in jeopardy at the time of the amendment of the statute. The statute, as previously defined, did not run at the time that it was extended by Congress, had it? No, that's correct. He could have been prosecuted as late as, what, 2006, I think? That's correct, up to February 2000. And this amendment was what year, 2001 or 2003? That's correct. And so he was still at risk at that point in time. Why wouldn't we read the statute to recognize the fact that it would not be unfair to extend his liability, since Congress saw this, particularly a crime involving a child at the time, and Congress saw fit to recognize that these crimes should never be extinguished during the life of the child. How would that be unfair as to him? Well, I think that goes around, number one. What are his settled expectations? I mean, criminals don't commit crimes knowing that they'll get off, right? I mean, criminals commit crimes because they can commit crimes. They don't think, oh, I'll abuse this child and all I have to do is wait six years and I won't be responsible. Or, oh, I'll murder this person. Oh, I can't murder someone because that's lifelong exposure. Criminals don't rely on statutes of limitations. They do things for various reasons. So why is it an unfair retroactive effect to impose liability on this man when Congress said in its findings, look, these claims, people have a long time dealing with these things. How is it unfair to him? First, from a global perspective, I think that would swallow up the clear statement rule. If you instead looked at, well, does this really have an adverse effect? Well, maybe the Supreme Court will tell us that. But the Supreme Court has told us already that this is a very hard thing to define. This is extraordinarily difficult for judges to try and draw a line here. Here's a person who's got – you've done a good job with your brief. I'm not finding fault with you, okay? Don't get me wrong. I'm not finding fault with you. You've made great arguments with regard to Congress knows how to deal with retroactivity if they want to, and your statement of the law is not overstated or puffed, in my mind. But I'm looking at the tools I have to look at, and I'm trying to understand how this is an unfair retroactive effect as to your client, given that he was still exposed at the time Congress sought to extend it. And I'd be happy to focus on my client. Okay. Although, you know, I do think that the analysis is more focused on the statute. Well, the case never has more clothes than it wears. So this is about people whose claims had not expired. With respect to my client. Criminal liability had not expired. With respect to my client, you know, This is an ongoing series of events where originally his daughter accuses him of this in 1995. No one believes her. Her mother doesn't believe her. It goes on. That's often the case with children, which is apparently why Congress decided to extend it for the entire victim's life. Whether that's good or bad policy, you and I can have a great debate on. I was a state trial judge once upon a time, and I saw some old claims in this area myself. But whether that's good or bad policy is not what we're talking about. And what did Congress say here? Congress said that as to these types of claims, we will not extinguish them until the victim is dead. So your argument that Mr. Weingarten won't be able to defend himself, Congress has already swept that away. But there was, of course, in the conference report, there's some indication that there was some controversy with respect to that. So someone who's victimized before 2000, but let me finish. Someone who's victimized before 2003, Congress has the concern that the defendant won't be able to defend himself. But after 2003, Congress doesn't give a rat's behind and says, that's too bad. Until the victim dies, you're exposed. So now what is the unfair advantage or the unfair situation for your client, who was exposed at that time, when Congress says those concerns are no longer relevant? The policy reasons underlying the statute of limitations are, of course, that with more passage of time, it becomes more difficult to defend oneself and also to encourage law enforcement to promptly bring charges. Congress was not very sensitive to that concern in 2003 when it wiped away the statute of limitations and put a contemporaneous with the victim's life, was it? Was it? Was it? Well, there was a dissimple. Let's talk about the current statute, 2003. Do you think that that's good policy to expose someone for the victim's entire life? You obviously don't, and I don't disagree with you. But Congress didn't seem to agree with us, did they? Did they? Well, I think there was some dispute in Congress. Wait a second. Yeah, there were no votes. Sure, there were no votes. But what did Congress enact? We always talk about congressional intent. Thinking that Congress is of one mind about anything is an interesting concept. But Congress enacted a statute that said as long as the victim breathes, as long as the victim is alive, you are exposed, sir or madam. You are exposed. They made that choice. Why should we interrupt it? Well, coming back to the question with Mr. Weingart and how was he prejudiced, he was faced with these accusations a number of times in a number of proceedings. You're talking to me about the merits of Mr. Weingart's claim. I'm not interested, to be honest with you. I'm interested in what the unfair retroactive effects are to Mr. Weingart. He had his defenses, and the jury disbelieved him. They heard his defenses. They heard his defenses, and the jury found him guilty. And that guilty verdict has been affirmed. A section of it was vacated. I was on that earlier panel. So don't argue the merits to me. Argue to me what the unfair retroactive effects are in light of the fact that Congress decided to make this criminal liability exist from until the victim dies. I'm not sure if your Honor's question is with respect to the big question, you know, policy reason or with respect to how Mr. Weingart specifically was harmed. With respect to the policy question, I think it's just an issue of if Congress decided to have it apply retroactively, they would have stated that. With respect to the effect on him, he's repeatedly, you know, this thing evolves. His wife switches sides when she wants to get custody of children. I'm not interested. The jury heard that. The sufficiency is over with. I know your time has expired, but I did want to ask you one question about a Brady challenge you had here about the note that was found in his coat pocket when he was arrested. What basis do you have to believe that the government knew at some time that it wasn't your client who wrote that note? Because Mr. Weingarten is introduced to declaration saying that five days before the government introduced that, he told the prosecutors much. There's some corroboration of that in that he said he told her that in the context of her bringing him an authentic note. If Brady was to disclose to Weingarten what Weingarten had told the government, that's a Brady violation? The Brady violation would be if government counsel actually knew that he didn't write the note, such as by showing it to one of his family members who they were working with or by submitting it to him. But they didn't do that. What's the Brady violation? Well, I'm not so sure that they didn't do that. They never claimed that they didn't do that. I mean, you can't just say we're making a claim of Brady violation and say let the government know. You've got to say why. And there's nothing in the record that says someone else wrote that note. There wasn't like someone said, I looked at his handwriting, I told the government it wasn't his handwriting. Those kinds of things. Did the government have any of that? Not that they turned over. I think the primary argument is really the Naipoo argument, that look, he told them five days before they introduced it. He said it at sidebar when they tried to introduce it. He said it at sidebar again when the jury asked for the note. Neither time has the government counsel disputed. Disputed? Yes. They certainly disputed him on it. Well, they stood silent when he said that he didn't write it. He said nothing. You would think if you were to do that. That's a Brady violation? No, I think that's the Naipoo. When the defendant says I didn't do it? I think that's the Naipoo violation. The introducing, you know, basically sticking your head in the sand. Common sense, every, all the evidence indicates that he didn't write it, and they just say they're not going to look at it at all. And I think there's at least enough there under this Court's Drake case to say, well, you know, we ought to have a discovery and an evidentiary hearing to decide what happened. All right. We've got a couple of minutes for rebuttal. Why don't we hear from the government? Thank you, Mr. Prince. Good morning. Jennifer Sasso for the United States. The defendant stands properly convicted and sentenced for sexually abusing his daughter. The district court correctly determined that the defendant had failed to raise a colorable claim in his kitchen sink habeas petition below, and this Court should consider that. Well, it was colorable enough that we appointed counsel or that we granted a certificate of appealability, and Mr. Burns has come all the way across the country and cited some good law about the fact that Congress knows how to tell, say when it wants a statute to be retroactive and when it doesn't. How do you, what do you say to the argument that when Congress was amending the terrorism statute, it used the following language? It says, the amendments made in this section shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section. It doesn't say that in 3283, does it? Your Honor, it does not say that in the committee comments, but that's because in Section 3283, Congress was abundantly clear in the phrasing of the statute. They said no other statute of limitations shall preclude such prosecution. It's certainly true that the first time that Congress used those words, when they first enacted the predecessor version of the statute. Well, but it was, they were amending 3283 when they extended it, right? The first time that they wrote it, it's clear that that phrase would have indicated that 3283 was intended to replace 3282, the general five-year statute of limitations. Right. However, when they did the revision in 2003, it would also be clear that the 2003 revision was intended to replace both 3282 and the predecessor version of this very statute. There would be a perverse result if a party was to look at the 2003 version of the statute and then be precluded from bringing a claim because of the predecessor version. So you're saying that, but we're clear here. The amendment that takes it out to the victim's life, the termination of victim's life, was to 3283. And prior to that, it was to the age of 25, right? That's correct. And that was contained in 3283. Yes. And how did 3283 begin when the statute extended out to the age of 25? Didn't it begin no statute of limitations that would, et cetera, et cetera? Yes, Your Honor. So it was talking about being exclusive and separate from the default rule of 3282, right? In its first version, that's correct. Right. But Congress is well aware of the need to be clear and have a clear statement about retroactivity, as Lanscraft and other cases say. And Congress, when it amends the statute of limitations and the terrorism statutes, I've had dealings with those and they're not much fun, says specifically. So how do you juxtapose the two and say that the language in 3283 is a clear statement? It's much clearer than the terrorism statute on its face. If you look at any possible statute of limitations that could apply to a child sexual abuse case and you read the phrase, no other statute of limitations shall preclude prosecution through the lifetime of the victim. And there is this predecessor version that would preclude it if the victim is, say, 26 or 27. I was going to ask you, what if the victim is 35 at the time that the 3283 is amended? So the criminal liability has been dead for 10 years.  We're not contending that, Your Honor. Well, then we have to read it. Don't we have to read it to include then only claims that exist at the time that this is enacted? What if the victim were 26 or 25 years one day on the day that this was enacted? How do we read it then? Your Honor, I think that would be then addressed as an ex post facto question as opposed to what the statute says facially. So the facial statute would potentially enable prosecution for that offense, but then the defendant would face or the government would face an ex post facto question. If the claim's previously been extinguished by the nature of the statute, that then brings you into the ex post facto problem because the claim is over with and can't be revived. That's correct, Your Honor. Can I ask you about something else? And that is this case was sent back to the district court a second time for articulation essentially of the 2255 denial. Was there a sufficient articulation by the district court on the ineffective assistance of counsel claim? Because there are a lot of declarations. There's a lot of materials that were before him, but there's not that much in the five page or so second ruling on the 2255. Why is that enough to have some deference to Judge Gleeson's decision? Your Honor, in that decision, the district court incorporated its prior rulings in this case in which it had extensively evaluated the performance of counsel. But that was the rule. It was essentially the Rule 33 decision because the first habeas decision was even about the same length as the second. So he often times referred back to the Rule 33, but at the time of the Rule 33 he didn't have the additional materials about ineffective assistance of counsel, as well as declarations of counsel of the two lawyers, too, that were involved in the trial. Yes. I think that the most recent orders by the district court did address the fact that the needle was not moved by what the district court read in those affidavits and petitions. And the reason that the district court looked back on that Rule 33 order is precisely because we evaluate the effectiveness of counsel at the time that they face at that time. And the district court had the discreet advantage of being able to watch firsthand the interactions between the defendant and counsel and being able to write on what was happening at the time that it was happening. But the district court didn't have, for example, the family court records that there's much made of those, that they could have been used to cross-examine the government's witnesses. It's not clear that the district court was in possession of those family court records. However, the arguments pertaining to those, their existence, and the fact of their evidentiary challenges were all fleshed out during the months leading up to trial and the time of trial. What does that mean? The parties had discussed on the record the fact that these family court proceedings existed and that those records were exactly what trial defense counsel was wrestling with and marching through at each time that they appeared in the case. Was that mentioned for the request to continue the trial? I know that there was a continuance granted at the request of the defense counsel. Yes. Was that one of the reasons? It was cited several times by the defense counsel as one of the voluminous records that was requiring more time in order for them to prepare for trial in this case. But it is notable that at the time that they were asked whether they were in fact prepared. And so we can assume from that and their declarations that they had used that time between February and March leading up to trial to master the materials that they felt they needed in order to conduct a cross-examination of the victim in this case. I'd like to make just one other point on the statute of limitations, unless the court has additional questions, which actually pertains to the Bridges analysis that is posited by defense here. The defendant has rested on Bridges to urge this court to look only at the elements of the charges that the defendant is convicted of here. And Bridges itself is distinguishable as addressed in our briefs. More notably, all of the other cases on which the defendant relies for this elements-based categorical analysis look to statutes that are, first of all, not statutes of limitations, but secondly, statutes that actually use the term elements on their face. And it's notable that this statute 3283 does not use the word elements in any way, shape or form. And so it makes sense that in the cases cited by the defendant, an elements-based approach is used. One case that the defendant cited actually addressed this issue specifically, and that's Nijewan, in which the court determined that the phrase offense involving without the use of the term elements did not warrant a categorical approach. And so while the defendant rests on it to urge this court to look to the elements only, it's actually a case in favor of the government's position. Unless this court has additional questions, we would ask that the court affirm the findings and rulings of the district court in this case. Thank you. Mr. Burns, you have a couple minutes. Thank you, Your Honor. I'd like to pick up Judge Droney on the question that you were asking regarding the sufficiency of the district court's findings. In the initial hearing in January 2015, the district court based its finding on the effect of Mr. Weingarten's people on the proceedings, so that made it very difficult for counsel. That allowed the judge, and the judge didn't get into it all. He didn't have before him all the declarations you've got in the appendices here? He did, but he didn't address any of them. He didn't say anything. He just blamed it on the people. And that way he didn't have to sort out all the conflicts and all the reasons to disbelieve counsel, all the new evidence. He just said it's the fault of his people. And, of course, this court remanded and said these findings aren't sufficient. And on Special Appendix 30, he made the same findings. He again blamed it on his people. And now he referred to this, to his previous order in 2008, May 2008. But the only page there that could be relevant is Special Appendix, or it's at the appendix, Appendix Volume 2, 422. It says the same things. Well, it's people, these unseen folks who are playing a behind-the-scenes influence. That can't possibly explain all the failures of defense counsel here, and the district court didn't even try to explain it. He gave one example of Mr. Weingarten's friends flailing when they were trying to call witnesses at trial. That hardly explains this vast array of ways in which defense counsel didn't prepare. It certainly is not sufficient based on the heft of the claims raised here to deny them. So if nothing else, the case should be remanded for appropriate treatment of those issues. I want to close by saying that I understand that relying on statute of limitations is not the most emotionally or morally satisfying way to resolve a case like this. I do think it's a correct claim on both bases raised. But I can understand the reluctance to do that. But if you're looking for an injustice, you need look no further than what happened with respect to the counsel's unpreparedness. Mr. Weingarten said over and over again, these people aren't prepared. They can't possibly be prepared. He was quieted in court. He was talked down to by his client, by his attorneys. He was slammed in letters. The district court said he frustrated his own lawyer's efforts. That's a finding, isn't it? Well, it's not based on anything specific, really. But we had all those stuff. He said what he saw and what he heard. Well, and what he saw and what he heard also, which he seems to neglect, which he neglects to mention, is that Mr. Weingarten is repeatedly saying, these people aren't ready. And they're demonstrating it by misstating facts on the record all the time. The judge doesn't know that because he doesn't have those facts in front of them. And they say on February 6th, you know, three weeks before trial, two and a half weeks before trial, we're not ready. We're behind the eight ball. We can't possibly be ready. And then when Mr. Weingarten says, well, look, they aren't ready. I need new counsel. They come in two weeks later and they tell the judge, oh, we're ready. There's no explanation from how did you go from behind the eight ball to not ready? Well, you know, hindsight's 20-20, and it's easy to second-guess a trial judge who was a distinguished trial judge who operated in the Eastern District for a long period of time, the former federal prosecutor himself. He's now gone on to private practice. And some of this may very well have been that these were the final days of Judge Gleeson's judicial career, some of the rulings. But I think it's a little disingenuous to say that you have a trial judge who's made observations of your client and his interactions with the court and his own willingness to participate, his overzealousness to participate in his defense at times, and his reliance on these, quote, other people, which Judge Gleeson mentions on a number of occasions, who allegedly are going to produce all these winning witnesses that never show up. And so I think it's – I guarantee you the section of limitations issue is troubling. And you've briefed it well. I don't fault you at all for it. You haven't done your job. You've done your job. You've done a great job. But to say that Judge Gleeson, you know, really was not listening to Mr. Weingarten I think stretches the record a little too thin. You've got a law – you've got a legal argument, and your legal argument is going to, in my mind, receive very serious attention from us. That's why you've got a lot of questions on it. But I don't see – you're talking about abuse of discretion. You're talking about a judge who made observations of your client, a judge who went to great lengths to try and talk your client out of representing himself, who then his own representation confirmed in the judge's mind. Well, the judge was startled because he realized that he actually had talked your client into it because your client really just wanted to have the opportunity once again to take control of his daughter's life and his wife's life, and he didn't want to do that. And it was heart-rending to that trial judge. So the fact that the trial judge didn't make some specific findings, we'll have to deal with that. We've sent it back twice to do that. If we have to, we'll get a reconstruction hearing if we think that's necessary. But I don't think it benefits your client to say that Judge Gleeson kind of gave you short shrift here. That's just not belied by the record, and it diminishes the credibility of your other arguments, in my view. I think I would be remiss, and I think what's more important if I didn't say that I believe that the undisputed evidence here shows that there was a very strong defense to be presented and that these attorneys did nothing to prepare to present it. They didn't go to the scene two miles from Mr. Stuttman's office. They didn't send investigators. They didn't get photographs, diagrams. They didn't talk to scores of witnesses. You can't send back them. He says he has his witnesses. They're going to show up. They're going to give a favorable testimony. And when the day of reckoning comes, these people are just nowhere to be seen, all the fault of your client. There's a great deal of contradictory evidence in the record with respect to that, including Reply 18, Reply Brief in 18, where it lists a number of contradictory declarations. And what you notice in the defense attorney's declarations is there are no specifics, so you can't challenge it. No, we're dealing with Strickland. We're dealing with, you know, your arguments, to my mind, went to some other standard than the Strickland standard. You know, your arguments posit that your client was due a Gibson-Dunn or Cravath defense. He wasn't. I think what we're dealing with at the core and what I was talking about is credibility. You know, I get your argument. I mean, I just wanted to make that observation. Okay. Thank you, Mr. Burns. Thank you. Thank you, Mr. Burns. You came a long way. Thank you.